UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------x
In re:                                              Chapter 11
                                                    Case Number 06-10128 (SMB)
**ALAN G. FRIEDBERG,**

                Debtor.
--------------------------------------------------------x
**J. GREGORY JONES**

                Plaintiff,                  **COMPLAINT TO RENDER A
                                                    DEBT NON-DISCHARGEABLE**

        v.                              Adversary Proceeding No. 06-[    ]

**ALAN G. FRIEDBERG,**

                Defendant.
--------------------------------------------------------x

**COMPLAINT TO RENDER A DEBT NON-DISCHARGEABLE**

J. Gregory Jones (the "Plaintiff" or "Jones"), by and through his undersigned counsel, as and for his complaint, pursuant to Rules 4007 and 7001(6) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules") and §523(a)(2)(A), (a)(4) and (a)(6) of title 11 of the United States Code, as amended (the "Bankruptcy Code"), to render non-dischargeable a debt owed by defendant, Alan G. Friedberg ("Debtor" or "Friedberg"), to the Plaintiff, respectfully alleges upon information and belief, as follows:

**The Parties**

1. The Debtor is an individual residing at 154 West 77th Street, New York, New York 10024.

2. Jones is an individual residing at 4325 Gayle Drive, Tarzana, CA 91356.

## Jurisdiction

3. The statutory predicates for the relief requested herein are §523(a)(2)(A), (a)(4) and (a)(6) of the Bankruptcy Code and Bankruptcy Rules 4007 and 7001(6).

4. This Court has jurisdiction of this matter under 28 U.S.C. §§157 and 1334 and §523(a) of the Bankruptcy Code. This is a "core" proceeding, as that term is defined in 28 U.S.C. §157(b)(2)(I).

5. Venue in this district and this Court is proper pursuant to 28 U.S.C. §§1408 and 1409.

## Background

6. The Debtor filed a voluntary petition under chapter 11 of the Bankruptcy Code on January 20, 2006 (the "Filing Date").

7. The Debtor is an individual and, to the extent in business, has continued in the management and operation of its business and property as a debtor-in-possession pursuant to §§1107 and 1108 of the Bankruptcy Code. No trustee or examiner has been appointed in the case.

8. Pursuant to Bankruptcy Rule 2003, the United States Trustee held a meeting of creditors under §341(a) of the Bankruptcy Code on February 27, 2006.

9. Pursuant to an Order of the Bankruptcy Court dated February 3, 2006, the last day for filing proofs of claim in this case was March 15, 2006.

10. Jones filed a proof of claim in advance of the bar date asserting claims in an unliquidated amount as detailed *inter alia*. Jones' proof of claim appears as claim no. 14 on the claims register for this case maintained by the Clerk of the Bankruptcy Court.

11. Peck/Jones Construction ("PJC") was a California corporation that engaged in large scale construction projects.

12. Jones and members of his family ultimately hold 100% of the ownership interests in PJC.

13. PJC ceased business operations in October 2004.

14. PJC became the subject of an involuntary bankruptcy proceeding in the United States Bankruptcy Court, Central District of California, Case No. 04-35757 on December 14, 2004 (the "PJC Case").

15. An order for relief was entered in the PJC Case on January 21, 2005. The PJC Case is pending before the Honorable Vincent P. Zurzolo. R. Todd Neilson was appointed Chapter 7 trustee in the PJC Case.

16. Prior to the PJC Case, during the period from mid 2002 to late October 2004, the Debtor and Jones entered into a term sheet agreement by which the Debtor was to acquire PJC from Jones and members of the Jones family (the "Term Sheet").

17. Though certain steps to consummation of the Term Sheet had been completed, including shifting of financial control of PJC to the Debtor, the Term Sheet was not fully consummated.

18. Prior to consummation of the transaction contemplated by the Term Sheet, the Debtor assumed and maintained operational and monetary control of PJC as well as the numerous joint venture construction projects to which PJC was a party, including a joint venture for construction of Cedars Sinai Medical Center (the "JV") between PJC and Obayashi Corporation, a Japanese corporation ("Obayashi").

19. The Debtor's monetary control over PJC included signatory power over PJC bank accounts and control over the account for the JV (the "JV Account").

20. Subsequent to taking control of PJC, the Debtor obtained approximately $7 million in loans in the name of PJC (the "Loans"), which were collateralized by the assets of PJC and various PJC joint ventures, including the JV.

21. The Debtor improperly used proceeds from the Loans for his personal benefit and not for the use or benefit of PJC and/or the JV.

22. As the person in full financial control of PJC, as described more fully *inter alia*, the Debtor owed a duty to the stockholders of PJC, including Jones.

23. Once the financial institutions that provided the Loans to PJC discovered that a default of the Loans had been triggered through the Debtor's actions, the financial institutions swept PJC's bank accounts, including the JV Account.

24. Upon learning that the JV Account had been seized by the financial institutions, representatives of Obayashi demanded that the Debtor and Jones immediately restore the funds of the JV Account.

25. In October 2004, Obayashi informed Jones and the Debtor that they required both Jones and the Debtor to sign a guarantee with respect to the $2,075,561.48 (the "Funds") that had been swept from the JV Account.

26. Obayashi represented to Jones and the Debtor that if either failed to sign a guarantee, Obayashi would initiate criminal and civil charges against them.

27. Though Jones was in no way involved in the improper use of funds that led to the sweeping of the JV Account by the financial institution, Jones had no feasible alternative but to enter into a written guarantee for return of the Funds at Obayashi's insistence (the "Jones Guarantee").

28. Jones could not financially match Obayashi in litigation and Jones believed his only option was to attempt to preserve whatever value remained in PJC by creating a window of time to be able to replace the Funds through execution of the Jones Guarantee.

29. The Debtor also entered into a guarantee with respect to return of the Funds (the "Friedberg Guarantee" together with the Jones Guarantee, the "Guarantees").

30. At Jones' insistence, approximately $1.5 million of the Funds were replaced through application of PJC profits from other projects and use of all available business funds.

31. As the entirety of the Funds was not replaced by the deadline, Obayashi and the JV filed a lawsuit against the Debtor and Jones for alleged breach of the Guarantees. The lawsuit is styled <u>Obayashi Corporation, et al., v. Alan G. Friedberg, et al.</u> pending before the Honorable Malcolm H. Mackey in Department 55 of the Superior Court of the State of California for the County of Los Angeles, Central District, Case No. bc327456 (the "California Action").

32. The Superior Court granted Obayashi's motion for Summary Judgment against Jones. Jones believes that there are valid grounds for appeal.

33. The California Action is progressing through the state court in California with respect to Jones and is stayed as against the Debtor, pursuant to §362 of the Bankruptcy Code.

### First Cause of Action

### Claim under §523(a)(6) - Equity Interest

34. Jones repeats and realleges paragraphs 1 through 33 of this Complaint as if fully set forth herein.

35. The Debtor owes a debt to Jones for willful and malicious injury by the Debtor to another entity or to the property of another entity, as set forth in §523(a)(6) of the Bankruptcy Code.

36. The Debtor deliberately obtained the Loans in the name of PJC with the intent of improperly using the proceeds for his personal benefit and not for the use or benefit of PJC and/or the JV.

37. The Debtor's improper use of the proceeds from the Loans caused harm to the stockholders of PJC, including Jones.

38. Due to the Debtor's actions, the value of PJC equity plummeted, PJC ceased operations and became subject of an involuntary bankruptcy proceeding.

39. The Debtor knew that use of the proceeds of the Loans for his personal benefit and not for the use or benefit of PJC and/or the JC would cause harm to the ultimate stockholders of PJC, including Jones.

## Second Cause of Action

## Claim under §523(a)(6) - Guarantee

40. Jones repeats and realleges paragraphs 1 through 39 of this Complaint as if fully set forth herein.

41. The Debtor owes an additional debt to Jones for willful and malicious injury by the Debtor to another entity or to the property of another entity, as set forth in §523(a)(6) of the Bankruptcy Code.

42. The Debtor was in full financial control of PJC, as described *inter alia*.

43. As a direct result of the Debtor's willful and malicious actions, Jones entered into the Jones Guarantee.

44. By virtue of the Jones Guarantee, Jones became subject to a judgment in the California Action in the estimated amount of $650,000 (certain calculations of costs are still under

consideration in the California Action) (the "Judgment"), which caused direct injury to Jones' property.

45. By reason of the foregoing, the Debtor's debt to Jones in an unliquidated amount should be nondischargeable pursuant to §523(a)(6) of the Bankruptcy Code.

**Third Cause of Action**

**Claim under §523(a)(4) - Equity Interest**

46. Jones repeats and realleges paragraphs 1 through 45 of this Complaint as if fully set forth herein.

47. The Debtor owes a debt to Jones for fraud or defalcation while acting in a fiduciary capacity, embezzlement, or larceny, as set forth in §523(a)(4) of the Bankruptcy Code.

48. The Debtor misappropriated the proceeds from the Loans for his personal use without explanation or valid business purpose.

49. These deliberate actions were in violation of the Debtor's duty to the ultimate stockholders of PJC, including Jones.

50. By reason of the foregoing, the Debtor's debt to Jones in an unliquidated amount should be nondischargeable pursuant to §523(a)(4) of the Bankruptcy Code.

**Fourth Cause of Action**

**Claim under §523(a)(2)(A) - Equity Interest**

51. Jones repeats and realleges paragraphs 1 through 50 of this Complaint as if fully set forth herein.

52. The Debtor owes a debt to Jones for money, property, services, or an extension, renewal, or refinancing of credit obtained by false pretenses, a false representation, or

actual fraud, other than a statement respecting the debtor's or an insider's financial condition, as set forth in §523(a)(2) of the Bankruptcy Code.

53. The Debtor made false representations to Jones that led to the Debtor's monetary control over PJC.

54. As the person in full financial control of PJC, as described *inter alia*, the Debtor owed a duty to the ultimate stockholders of PJC, including Jones.

55. The Debtor obtained money or property in the form of the proceeds from the Loans, which the Debtor then converted for personal use.

56. By virtue of the Debtor's actions, PJC was forced to use all available business assets to replace the Funds, which forced PJC into economic crisis. The Debtor's actions destroyed a long running, successful economic enterprise and usurped the value of Jones' equity interest in PJC.

57. By reason of the foregoing, the Debtor's debt to Jones in an unliquidated amount should be nondischargeable pursuant to §523(a)(2) of the Bankruptcy Code.

### Fifth Cause of Action

### Claim under §523(a)(2)(A) - Guarantee

58. Jones repeats and realleges paragraphs 1 through 57 of this Complaint as if fully set forth herein.

59. The Debtor owes an additional debt to Jones for money, property, services, or an extension, renewal, or refinancing of credit obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition, as set forth in §523(a)(2) of the Bankruptcy Code.

60. As a direct result of the Debtor's false representations to Jones and the Debtor's full financial control of PJC, as described *inter alia*, Jones entered into the Jones Guarantee.

61. By virtue of the Jones Guarantee, Jones became subject to the Judgment and the Debtor received money, property or services to which the Debtor was not entitled.

62. By reason of the foregoing, the Debtor's debt to Jones in an unliquidated amount should be nondischargeable pursuant to §523(a)(2) of the Bankruptcy Code.

[remainder of page intentionally blank]

**WHEREFORE**, plaintiff, Jones, demands judgment against defendant, the Debtor, determining that the Debtor's debt to Jones in an unliquidated amount is nondischargeable pursuant to §523(a)(2)(A), (a)(4) and (a)(6) of the Bankruptcy Code, and for such other and further relief as this Court may deem just and proper, including costs and disbursements of bringing this action.

Dated: New York, New York
      April 28, 2006

HALPERIN BATTAGLIA RAICHT, LLP

By:   */s/ Robert D. Raicht*
      Alan D. Halperin (AH-8432)
      Robert D. Raicht (RR-2370)
      Julie D. Dyas (JD-4178)
      555 Madison Avenue, 9th Floor
      New York, New York 10022
      (212) 765-9100

      -and-

BOVITZ & SPITZER
J. Scott Bovitz
880 West First Street, Suite 502
Los Angeles, CA 90012-2430

*Co-Counsel for Plaintiff, J. Gregory Jones*